```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
STEVEN FISCHKOFF,                                              :

                  Plaintiff,                                    :

       -v.-                                                     :    OPINION & ORDER
                                                                     17 Civ. 5041 (GWG)
                                                                :
IOVANCE BIOTHERAPEUTICS, INC. and
MARIA FARDIS,                                                   :

                                                                :

                  Defendants.                                   :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Steven Fischkoff brought this suit against Iovance Biotherapeutics, Inc. and Maria Fardis (collectively "Iovance") alleging that Iovance beached a contractual employment agreement, failed to pay him wages, and retaliated against him. Fischkoff now moves to amend his complaint to include a claim of defamation.[1] For the reasons stated below, Fischkoff's motion is granted.

I. FACTUAL ALLEGATIONS

Because the resolution of Fischkoff's motion turns on whether his proposed defamation

---

[1] See Plaintiff's Notice of Motion for Leave to Amend Complaint, filed August 2, 2018 (Docket # 109); Plaintiff's Memorandum of Law in Support of his Motion for Leave to Amend the Complaint, filed August 2, 2018 (Docket # 110); Affirmation of Kimberly Klein, filed August 2, 2018 (Docket # 111) ("Klein Aff."); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint, filed August 22, 2018 (Docket # 115) ("D. Mem."); Plaintiff's Memorandum of Law in Further Support of his Motion for Leave to Amend the Complaint, filed September 5, 2018 (Docket # 118); Affirmation of Kimberly Klein in Further Support of Motion to Amend, filed September 5, 2018 (Docket # 119); Defendant's Memorandum of Law in Sur-Reply to Plaintiff's Motion for Leave to Amend the Complaint, attached to Docket # 124 (Docket # 124-1) ("D. Surreply"); Letter from Kimberly Klein, filed September 28, 2018 (Docket # 126).

claim states a claim for relief, we accept "all factual allegations [in his proposed complaint] as true and draw[] all reasonable inferences in favor of the plaintiff." Empire Merchants, LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018) (quotation marks omitted). We also consider all "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

This dispute involves Steven Fischkoff, a New Jersey resident and a medical doctor for over 40 years, and Iovance, a publically traded cancer immunotherapy development company with offices in New York. Proposed Second Amended Complaint (annexed as Ex. 1 to Klein Aff.) ("SAC") ¶¶ 1-3, 6. Fischkoff conducts pharmaceutical and cellular therapy research and was hired in February 2016 to be Iovance's Vice President and Chief Medical Officer. Id. ¶¶ 5-6. Fischkoff conducted clinical trials among other duties. Id. ¶ 7. As part of Fischkoff's written Employment Agreement, he was to be paid a base salary of $400,000 and was eligible for additional compensation bonuses, including salary incentives and stock options. Id. ¶¶ 10-11. If Fishkoff were to be fired for cause, however, he would be entitled only to "his accrued or vested compensation." Id. ¶ 13. The Employment Agreement defined cause as either "(I) a material breach of the Employment Agreement;" or "(ii) improper use of confidential information." Id.

In January 2017, Fischkoff received a letter from Iovance's Human Resources office stating that he was in material breach of his Employment Agreement because he had failed to "perform faithfully and diligently" his duties under the agreement. Id. ¶ 25. Later that day, Fischkoff received another letter from Fardis, the Chief Executive Officer of Iovance, stating that Iovance was putting Fischkoff on a Performance Improvement Plan ("PIP"), under which Fischkoff could be terminated in 30 days if he did not "improve." Id. ¶ 27. On February 22,

2

2017, before the 30-day PIP had expired, Fardis informed Fischkoff that he had failed the PIP and extended a new PIP period through March 24, 2017. Id. ¶¶ 32-33. Four days after the second PIP expired, Iovance terminated Fischkoff's employment. Id. ¶ 35.

Fischkoff alleges that he properly performed his duties and that Iovance fabricated reasons for his termination to avoid paying money due to him contractually. See id. ¶¶ 22-24, 29-30. Fischkoff's amended complaint alleges breach of contract, New York Labor Law violations, retaliation under the New York Labor Law, and breach of the implied covenant of good faith and fair dealing. See SAC ¶¶ 55-73.

Fischkoff now seeks to amend his complaint to add a claim for defamation based on two Iovance corporate filings with the Securities and Exchange Commission ("SEC"). See id. ¶¶ 49-54. The new allegations state that "[o]n or about November 2, 2017, Defendants publicly filed with the U.S. Securities and Exchange Commission a Form 10-Q for the quarterly period ended September 30, 2017 . . . in which Defendants stated that 'Dr. Fischkoff was terminated "for cause" as that term is defined in his employment agreement.'" Id. ¶ 49. The proposed complaint also alleges that "[o]n or about March 12, 2018, the Company filed with the U.S. Securities and Exchange Commission a Form 10-K for the fiscal year ended December 31, 2017 . . . [that] repeated the same Defamatory Statement from the November 2017 Form 10-Q." Id. ¶ 53.

While not alleged in the complaint, it is undisputed that these forms are required to be filed pursuant to federal law. One court recently summarized them as follows:

> A Form 10–K is an annual report that is intended to detail the financial condition and performance of a particular company for an annual period in a comprehensive manner. See [15 U.S.C. §§ 78m, 78o(d)]; see also 17 C.F.R. §§ 240.15d–1, 249.310. On a quarterly basis, by contrast, the company would file a Form 10–Q, a report that provides a continuing view of the company's financial position during the year and generally includes unaudited financial statements. See 15 U.S.C. §§ 78m, 78o(d); see also 17 C.F.R. §§ 240.13a–13, 249.308a.

3

Wyche v. Adv. Drainage Sys., Inc., 2017 WL 971805, at *1 n.1 (S.D.N.Y. Mar. 10, 2017), aff'd, 710 F. App'x 471 (2d Cir. 2017).

## II. GOVERNING LEGAL PRINCIPLES

Fed. R. Civ. P. 15(a)(2) provides that leave to amend a pleading should be "freely give[n] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962). A court must have "good reason" to deny leave to amend. See Acito v. IMCERA Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995). Leave to amend may be denied in situations of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party." Foman, 371 U.S. at 182. An amendment may also be denied if it is futile. See id. Here, defendants argue only that the proposed amendment is "futile." See D. Mem. at 4.

When a party argues that an amendment to a pleading would be futile, the court must determine whether "a proposed claim could . . . withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Pursuant to Rule 12(b)(6), a party may move to dismiss the opposing party's pleading on the ground that it "fail[s] to state a claim upon which relief can be granted." In deciding such a motion, a court must accept as true all of the allegations contained in the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). But that principle does not apply to legal conclusions. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A party's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks, citation, and alteration omitted). In other words, "[t]hreadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"
Iqbal, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any
conclusory statements in the pleading, see id. at 679.

Next, a court must determine if the complaint contains "sufficient factual matter" which,
if accepted as true, states a claim that is "plausible on its face." Id. at 678 (internal quotation
marks and citation omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d
117, 121 (2d Cir. 2007) ("[A pleading] must allege facts that are not merely consistent with the
conclusion that the [adverse party] violated the law, but which actively and plausibly suggest
that conclusion.") (citations omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a probability requirement, but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). "[W]here the well-
pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a
complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not
"'show[n]'— 'that the pleader is entitled to relief.'" Id. at 679 (second alteration in original)
(quoting Fed. R. Civ. P. 8(a)(2)).

III. DISCUSSION

"To state a cause of action to recover damages for defamation, a plaintiff must allege that
the defendant published a false statement, without privilege or authorization, to a third party,
constituting fault as judged by, at a minimum, a negligence standard, and it must either cause
special harm or constitute defamation per se." Pall v. Roosevelt Union Free Sch. Dist., 144
A.D.3d 1004, 1004-05 (2d Dep't 2016); accord Celle v. Filipino Reporter Enters. Inc., 209 F.3d

5

163, 176 (2d Cir. 2000); Frechtman v. Gutterman, 115 A.D.3d 102, 104 (1st Dep't 2014).[2]

Iovance does not in this motion question whether Fischkoff has pleaded the elements of a defamation claim. Instead, it argues that the proposed complaint shows that the statements in the SEC filings are "subject to absolute privilege under New York common law." D. Mem. at 4. The defense of absolute privilege Iovance raises has been described by the New York Court of Appeals as follows:

> The absolute privilege generally is reserved for communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings. This protection is designed to ensure that such persons' own personal interests--especially fear of a civil action, whether successful or otherwise--do not have an adverse impact upon the discharge of their public function.

Rosenberg v. MetLife, Inc., 8 N.Y.3d 359, 365 (2007) (citation and internal quotation marks omitted).

In Rosenberg, the plaintiff had sued based on statements filed by his employer on a form "U-5," which the National Association of Securities Dealers ("NASD") requires employers to file when an employee is terminated. Id. at 362-63. Rosenberg upheld the employer's claim that the statements on the form were privileged on the ground that the NASD was "a quasi-governmental entity that has been delegated authority to enforce the requirements of the Exchange Act and is the primary regulator of the broker-dealer industry." Id. at 366.

Iovance's argument is a simple one: that the SEC filings are subject to an absolute privilege "because New York courts consider the SEC a quasi-judicial body." D. Mem. at 5. Taking Iovance's argument to its logical conclusion, it contends that it cannot be sued for

---

[2] The parties' briefs assume that New York law applies to Fischkoff's defamation claim. Accordingly, we apply New York law. See IBM Corp. v. Liberty Mut. Fire Ins., 303 F.3d 419, 423 (2d Cir. 2002).

anything that it states in a 10-K or 10-Q form filed with the SEC.

The flaw in Iovance's argument, however, is readily apparent upon an examination of the case law of absolute privilege. The New York Court of Appeals has accorded statements to governmental authorities an absolute privilege only where they are made as part of or preliminary to "a judicial or quasi-judicial proceeding." Rosenberg, 8 N.Y.3d at 365 (emphasis added). Thus, in Rosenberg, the Court of Appeals took pains to point out that "[u]pon receipt of the Form U-5, the NASD routinely investigates terminations for cause to determine whether the representative violated any securities rules." Id. at 367. As a result, Rosenberg concluded that the "the compulsory Form U-5 can be viewed as a preliminary or first step in the NASD's quasi-judicial process." Id.

Here, the complaint is devoid of any allegations that forms 10-K and 10-Q form part of an SEC "quasi-judicial process." And Iovance has not pointed to any law or regulation suggesting that they are part of such a process. Thus, the foundation for the absolute privilege doctrine under New York law — the existence of a quasi-judicial process or proceeding — is lacking.

The absolute privilege doctrine was further explicated in the recent Court of Appeals case of Stega v. N.Y. Downtown Hosp., 31 N.Y.3d 661 (2018). In Stega, a doctor employed by a hospital had made negative statements about the plaintiff, another employee at the hospital, to a Food and Drug Administration ("FDA") investigator. The statements from the doctor had been solicited as part of the FDA's investigative process of an entity headed by the plaintiff during her employment, called the "Internal Review Board" ("IRB"). The doctor's statements were ultimately included in the FDA's inspection report of the hospital where the plaintiff worked. Stega, 31 N.Y.3d at 664-67.

Stega held that the doctor's statements were not protected by absolute privilege.  Id. at 669.  Stega began by noting that

> [w]hether allegedly defamatory statements are subject to an absolute or a qualified privilege "depend[s] on the occasion and the position or status of the speaker" . . . a complex assessment that must take into account the specific character of the proceeding in which the communication is made. We have reiterated that "[a]s a matter of policy, the courts confine absolute privilege to a very few situations."

31 N.Y.3d at 670 (citation and internal quotation marks omitted).  Stega then reaffirmed that "absolute immunity applies only to a proceeding in court or one before an officer having attributes similar to a court."  Id. (citing Toker v. Pollak, 44 N.Y.2d 211, 219 (1978)) (emphasis added) (internal quotation marks omitted).  Summarizing the reasoning of its past decisions, Stega concluded that "for absolute immunity to apply in a quasi-judicial context, the process must make available a mechanism for the party alleging defamation to challenge the allegedly false and defamatory statements."  Id. at 671.  It emphasized that its limitation of the doctrine "ensures that the expansion of the scope of absolute privilege, from testimony at judicial proceedings to the wide range of statements made to administrative agencies, is kept within narrow bounds: the privilege extends only if procedural safeguards enable the defamed party to contest what is said against her."  Id.  As for the FDA investigation in Stega, it viewed the critical issue to be whether plaintiff was "entitled to participate, by way of a hearing or otherwise, in the FDA's review of the IRB and thereby challenge the accusations against her made by [the doctor]."  Id. at 672.  Concluding that there was no such role for plaintiff, Stega rejected absolute immunity for the defendant hospital.  Id.

In the face of the limitations on the absolute immunity doctrine, Iovance is reduced to arguing the broad proposition that "New York courts consider the SEC a quasi-judicial body."

8

D. Mem. at 5. But the issue is not whether the SEC or some division within it performs adjudicative functions but whether the filing of the Form 10-K or Form 10-Q alleged in the complaint were part of a quasi-judicial proceeding before the SEC. The complaint does not so allege and Iovance does not so contend.

In a sur-reply, Iovance recognizes that Stega involved statements made during "investigative proceedings," see D. Surreply at 2, and argues that Stega is irrelevant because "the purpose of the mandatory SEC filings is not to investigate Fischkoff's conduct." Id. at 3. But defendants fail to grapple with the necessary implication of their concession that the filing of the 10-K and 10-Q did not form part of any investigative proceeding. Stega squarely held that the absolute immunity doctrine applies "only to a proceeding in court or one before an officer having attributes similar to a court." 31 N.Y.3d at 670 (emphasis added). Because the complaint does not allege that there was such a proceeding, and defendants do not point to any law or regulation that provides for such a proceeding, the absolute immunity doctrine for judicial or quasi-judicial proceedings does not apply.

Iovance cites to two lower court cases that it contends justify granting it absolute immunity. One case, Able Energy, Inc. v. Marcum & Kliegman LLP, 69 A.D.3d 443 (1st Dep't 2010), is of no help to Iovance because, consistent with Rosenberg, it found that statements at issue were contained in a letter that "could be used by the SEC in a quasi-judicial proceeding" — one undertaken by the SEC's "finance division." Id. at 444. Iovance has pointed to no such quasi-judicial proceeding here.

The other case, Icahn v. Raynor, 32 Misc.3d 1224(A), 2011 WL 3250417 (Sup. Ct. June 16, 2011) (table), aff'd, 99 A.D.3d 546 (1st Dep't 2012), involved allegedly defamatory statements made in an SEC Form 13-D — a form that discloses ownership of a company's

shares. See 17 CFR 240.13d-1. In an alternative holding, Icahn held that absolute privilege applied because "[t]he Securities and Exchange Commission is considered a quasi-judicial body and thus the privilege is applied to statements made in the form 13D." 2001 WL 3250417, at *6. Icahn, however, made no attempt to connect the filing of the form 13D with any actual adjudicative proceeding, let alone an adjudicative function of the SEC. The case it cites in support of its broad statement, Cooke v. Laidlaw, Adams & Peck, Inc., 126 A.D.2d 453 (1st Dep't 1987), did not discuss absolute immunity at all but instead described an "administrative proceeding investigating, inter alia, the steps that [plaintiff] took, as head of [defendant's] corporate finance department, in supervising the 'due diligence' inquiry of [a company's] offering." Id. at 454. Icahn also cited Cicconi v. McGinn, Smith & Co., 27 A.D.3d 59 (1st Dep't 2005), but Cicconi merely involved the same U-5 form that was at issue in Rosenberg. Id. at 60.

In a diversity case such as this one, "[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994). "In making this prediction, we give the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts." Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 329 (2d Cir. 2005) (citation omitted). Given the clear discussion of the limits of the absolute immunity doctrine in Stega, we cannot follow Icahn to the extent it exceeds the limits of that doctrine. Stega is clear that for absolute immunity to apply, the statement at issue must be made by means of analyzing the "specific character of the proceeding in which the communication is made." 31 N.Y.3d at 670. No such "proceeding" has been identified here and thus absolute immunity is not available

10

to Iovance.

In closing, we note that defendants argue that allowing Fischkoff's defamation claim to proceed would mean that "every SEC filing describing litigation with a former employee would be subject to a defamation lawsuit under New York law." D. Surreply at 1. This is plainly not the case, however, because New York Civil Rights Law § 74 provides absolute immunity from suits for "the publication of a fair and true report of any judicial proceeding." We make no ruling regarding the effect of New York Civil Rights Law § 74 on Fischkoff's defamation claim because Iovance did not cite this statute in its opposition to Fischkoff's motion to amend. See also D. Mem. at 5, 7 (identifying its argument as being based on "common law").

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to amend (Docket # 109) is granted.

SO ORDERED.

Dated: October 17, 2018
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

11